In re the Marriage of Frances LaRaye (Carroll) KING, Respondent,

v.

Matthew CARROLL, Appellant.

No. C1-84-808.

Court of Appeals of Minnesota.

Oct. 23, 1984.

Gail Murray, Eliason & Murray, Hibbing, for respondent.

Manuel H. Stein, Stein & Stein, Hibbing, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Matthew Carroll appeals from an order denying his motion to change the custody

of his children based on allegations that their present environment endangers their physical health. Respondent Frances King contends that an order denying a change of custody is nonappealable. We hold that an order denying a post-decree motion for change of custody is appealable as of right, and we affirm the order of the trial court.

### FACTS

The marriage of Frances LaRaye (Carroll) King and Matthew Carroll was dissolved by decree on January 31, 1983, pursuant to a stipulation. Frances was given custody of the couple's four minor children, whose names and dates of birth are: Robert Joseph Carroll, born September 28, 1966 (prior to the marriage of the parties and legally adopted by Matthew); Matthew Edward Carroll, born October 6, 1969; Jacquie LaRaye Carroll, born July 16, 1971; and Franee Jo Carroll, born September 28, 1976. Matthew was given visitation rights including two months during summer vacation and such other times as the parties mutually agree.

At the time of the dissolution Frances lived with the children in Nashwauk, Minnesota. Matthew has lived and worked in Alaska intermittently since 1972. At the time of the hearing he lived in Kenai, Alaska. According to his schedule he works four weeks there followed by two weeks off, during which he returns to Minnesota and lives with his 73-year-old mother in Keewatin.

A few months after the divorce Frances married Curtis King. In April 1983 Frances moved with her children to his home approximately five miles from Cook, Minnesota. The home is a log cabin consisting of one large room on the first floor and a sleeping loft above, with no electricity or plumbing. The cabin is heated by a wood stove located approximately three feet from the nearest wall. The chimney consists of galvanized piping and rises straight up the middle of the room. The cabin has recently been insulated. Cooking is done on a propane gas range, and a gas refrigerator is used. The cabin is equipped with three smoke alarms, which the Kings test once a week.

The cabin is approximately one-quarter mile from a gravel road leading to the county road another one-quarter mile beyond, where the children are picked up by bus for school. The closest neighbors are less than one-half mile away. The Kings plan some improvements to the cabin, including a stone fireplace, another bedroom, and a well.

In September 1983 Matthew filed a motion for a change of custody under Minn. Stat. § 518.18(c) (1982), claiming that the children's living environment endangered their physical and emotional health. The court ordered a home study by the St. Louis County Social Services Department. The social worker assigned to the case found the safety features of the cabin adequate and the children reasonably happy about living there. The Department recommended that Frances retain custody of the children.

At the time of the hearing two of the four children were no longer living in the home. The oldest son, Robert, was living with relatives in Minneapolis. Matthew did not contest his custody. The second son, Matthew, was living with his grandmother in Keewatin with the consent of both parents.

The trial court denied Matthew's motion but also found:

> The current environment of the parties' two younger children, Jacquie Carroll and Franee Jo Carroll, is potentially dangerous to their physical well-being relative to compliance with applicable fire safety regulations.

Addressing this "potential danger," the court ordered:

> Petitioner shall keep the minor children in a home that complies with all applicable health, safety and fire codes. Respondent may at any time request an inspection by any applicable public officials relative to compliance with said regulations that he feels is appropriate, * * * in the event that it is determined that

any of such regulations are being violated, said violations shall be remedied within 30 days or the Petitioner shall remove said children from said premises.

The court also ordered that the minor child, Matthew, be allowed to choose with whom he would live.

## ISSUES

1. Is the order denying a change in custody of the children appealable?

2. Did the trial court abuse its discretion in denying a motion for change in custody after finding that "potential danger" to the children's physical health existed in their present environment?

## DISCUSSION

### I

■ Under Minn.Stat. § 518.18(a) (1982) no motion to modify a custody order may ordinarily be made earlier than one year after the date of a decree of dissolution. However, Matthew's motion for change of custody was based on Minn.Stat. § 518.-18(c) (1982), which states:

The time limitations prescribed in clauses (a) and (b) shall not prohibit a motion to modify a custody order if the court * * * has reason to believe that the child's present environment may endanger his physical or emotional health or impair his emotional development.

There was reason to believe that the children's environment might have been endangering their physical health, as established by affidavits of Matthew Carroll, Michael Carroll, Donald Lindahl, and Matthew Brletich.

Frances argues, however; that since the court denied the motion and made no change in custody except for allowing one son to choose the custodial parent, the order is not appealable.

■ Generally, an order denying a motion to amend or vacate a final order or judgment is not appealable. *Evenrud v. Park & Recreation Board of City of Minneapolis*, 310 Minn. 234, 245 N.W.2d 609

(1976); *Kottke's Bus Co., Inc. v. Hippie*, 286 Minn. 526, 176 N.W.2d 752 (1970); *LeRoy v. Figure Skating Club of Minneapolis*, 281 Minn. 576, 162 N.W.2d 248 (1968). The Supreme Court has occasionally permitted appeals from orders refusing to vacate default judgments brought pursuant to Rule 60.02, without, however, deciding the appealability of such orders. 3 J. Hetland & O. Adamson, *Minnesota Practice* 278 (1970) (citing *Finden v. Klaas*, 268 Minn. 268, 128 N.W.2d 748 (1964); *LaFond v. Sczepanski*, 273 Minn. 293, 141 N.W.2d 485 (1966)). The finality of judgments is, of course, a value to be sedulously protected.

■ Minn.Stat. §§ 518.18 and 518.64 clearly contemplate post-decree motions regarding custody, visitation, maintenance and child support. There has been no question but that the party who disputes the award of post-decree relief has a right of appeal because the disputant can assure entry of an amended judgment and decree. Respondent argues that one whose own post-decree motion to amend or vacate has been denied should have no right of appeal, yet it is undeniable that the order in effect "determines the action and prevents a judgment from which an appeal might be taken." *See* Minn.R.Civ.App.P. 103.03(e).

■ We conclude that application of the general rule to motions brought under Minn.Stat. §§ 518.18 and 518.64 would be contrary to the legislative scheme in enacting statutes authorizing such procedures. The legislature wisely recognized that changes in circumstances affecting custody, visitation, maintenance, and support required, in justice, that continuing jurisdiction be vested in the court, overriding the interest of the common law in the finality of judgments. If this right to modification is erroneously denied, the remedy of appeal must be available. Therefore, we, here, hold that an order denying a motion for change of custody brought pursuant to Minn.Stat. § 518 is appealable as of right.

## II

A trial court has broad discretion in awarding child custody and its discretion will not be set aside unless it was arbitrary or a clear abuse of discretion. *Kotila v. Kotila*, 351 N.W.2d 661, 662 (Minn.Ct.App. 1984) (citing *Peterson v. Peterson*, 308 Minn. 365, 368, 242 N.W.2d 103, 106 (1976)).

Minn.Stat. § 518.18 governs modification of custody orders. In *State on Behalf of Gunderson v. Preuss*, 336 N.W.2d 546, 548 (1983), the court stated:

> Thus, for a custody modification, the court must first make a two-fold finding: (1) that a change has occurred in the circumstances of the child or his custodian, and (2) that the modification of custody is necessary to serve the best interests of the child.

> \*　　\*　　\*　　\*　　\*　　\*

> [T]he statute [Minn.Stat. § 518.18] should be construed to require findings on the effect of the child's present environment on his physical and emotional well-being and a weighing of the harm the child would suffer from a change of environment against the advantage to be derived from the change.

It is clear that a change of circumstances has occurred here since the decree was issued. The question is whether modification of custody will serve the best interests of the children.

The social worker who recommended that custody remain with Frances considered the following factors:

(1) Frances has had the children with her for most of their lives, while Matthew has moved extensively for work purposes.

(2) The children would have to remain with their paternal grandmother or in the care of a housekeeper for four weeks of every six if custody were awarded to Matthew.

(3) The children's physical health is not endangered by their environment. She specifically noted that (a) the cabin was clean and warm and "very nice inside"; (b) the barrel stove was clean, with piping that looked new; and (c) the safety features of the home appeared to be adequate, and there were escape routes readily available through windows.

In a memorandum filed with its order the trial court explained its decision. It noted that Matthew acknowledged that Frances is a good mother. Recognizing that Matthew's main concern is with the children's environment, the court said, "[l]ifestyle however is a matter of personal preference that the Court should not interfere with, and there is nothing inherently wrong with a 'rustic' or 'primitive' way of living, provided that the emotional or physical health of the children is not endangered." Although the court found the heating system to be a "potential danger," the order provided that Matthew may request a safety inspection by appropriate public officials at any time. Thus, the trial court concluded that the potential physical danger did not outweigh the problems associated with awarding custody to Matthew.

The father's concern is doubtless genuine, but he is necessarily absent from Minnesota for a great deal of the time, and he had planned to leave the children with his elderly mother during his four-week absences. The Department of Social Services evaluated the present environment against this alternative and recommended that custody remain with the mother despite the spartan lifestyle undertaken. The premises were examined, recommendation was made, and the court fashioned a thoroughly appropriate order. There is no abuse of discretion here.

## DECISION

The order denying a change of custody is appealable. The trial court's order of March 8, 1984, is affirmed.

Affirmed.